UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 2:17-CR-138-PPS-JEM |
| ) | |
| RALPH DANIEL MENDEZ, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Ralph Daniel Mendez, a member of the dangerous Latin Dragons street gang, pleaded guilty to Count 1 of the sixth superseding indictment charging him with conspiracy to participate in racketeering activity in violation of Title 18 U.S.C. § 1962(d). He now seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), arguing among other things that his plea was deceptively coerced and the process of plea bargaining is unfair in general. [DE 1196.] The government filed a memorandum in opposition to this motion [DE 1202] and Mendez filed a reply. [DE 1209.] In a nutshell, I do not find compassionate release is warranted for Mendez, who has failed to show he exhausted his administrative remedies and has failed to identify any extraordinary and compelling reasons for release.

## Background

Mendez pleaded guilty to racketeering conspiracy and his plea agreement contained a binding agreement with the government that Mendez would be sentenced to a term of 204 months imprisonment. [DE 902 at 5.] I accepted this agreement

between the parties, and on October 29, 2021, I sentenced Mendez to 204 months imprisonment. [DE 970.]

Mendez is hardly a sympathetic defendant. In his plea agreement, Mendez agreed that he was part of the Latin Dragons Nation street gang, and participated in trafficking firearms and drugs including cocaine, marijuana, and Xanax. [DE 902 at 6.] Mendez and 18 other gang members were charged with racketeering conspiracy and other crimes related to the gang activities. Spanning two decades (from 2000-2020), the gang committed 10 murders, performed numerous other shootings and attempted murders, and distributed narcotics.

As a leader in the gang, Mendez ordered beatings of other gang members called "violations" for breaking gang rules or other misconduct. [DE 932, PSR, at 5-6.] Mendez also participated in several shootings. Mendez isn't some kid. In fact, as part of the conspiracy, in April 2017, Mendez drove his own son (Ralph Mendez, Jr., also a Latin Dragons member), to a rival gang neighborhood to shoot rival gang members. [*Id.* at 6.] Mendez and his son spotted two men they suspected were rival gang members, and Mendez, Jr. shot them. *Id.* In reality the victims were an innocent Uber driver and the driver's passenger. *Id.*

Mendez himself was in prison for some parts of the long-lasting conspiracy. In 1999, he was convicted of murder and sentenced to 28 years imprisonment. [*Id.* at 10.] A year after he was released, in 2012, he violated his parole and was sent back to prison. *Id.* Then in 2013, Mendez was convicted of possession of a firearm by a serious violent

2

felon and was sentenced to 6 years imprisonment. [*Id.* at 11.]  While he was out of prison, Mendez acted as a leader in the gang. [*Id.* at 5, 8.]

Mendez is now 50 years old and has served around 5 years of his 17-year sentence. [DE 1202 at 13.]

## Discussion

The Seventh Circuit has firmly established that "the exhaustion requirement is a mandatory claim-processing rule and therefore *must* be enforced when properly invoked." *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021) (emphasis in original).  Where, as here, the government has raised exhaustion as a defense [DE 1202 at 3], a defendant must show he presented his request for release to the warden at his facility, and either: (1) exhausted his administrative appeals (if the request was denied); or (2) has waited "30 days from the receipt of such a request by the warden of the defendant's facility" to seek relief from the Court.  18 U.S.C. § 3582(c)(1)(A); *Sanford*, 986 F.3d at 781-82 ("the defendant must first present his request for compassionate release to the warden and exhaust administrative appeals (if the request is denied) . . . .").  To properly exhaust, the defendant must have "present[ed] the same or similar ground for compassionate release in a request to the Bureau as in [the] motion to the court." *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021).

Here, Mendez claims he "personally submitted his request for sentence reduction and/or compassionate release to the Warden of the institution where he is incarcerated, by placing such request in the prison mail box to be delivered to the Warden" and more

3

than 30 days passed without a response. [DE 1196 at 21-22.] However, counsel for the government contacted the BOP and asked for any records showing requests made by Mendez. [DE 1202 at 4.] The BOP does not have any record of receiving a request for a reduction in sentence from Mendez. *Id.* In his reply, Mendez claims he "cannot be faulted if his request was some-how lost, or misplaced, thus, causing the Warden to not respon[d] to Defendant's request." [DE 1209 at 4.] However, Mendez did not submit to the court a copy of his request to the Warden or any other evidence showing that he indeed first submitted his request to the Warden and that it was either rejected and he exhausted his administrative appeals, or 30 days had elapsed. Therefore, I must deny the motion for compassionate release. *See, e.g., United States v. Fredrickson*, No. 17-cr-40032, 2022 WL 4246676, at *2 (C.D. Ill. Sept. 15, 2022) (denying motion for compassionate release and finding defendant failed to establish he properly exhausted his administrative remedies where defendant did not provide a record of any requests for compassionate release or any evidence that he presented his compassionate release request to the BOP); *United States v. Arias*, No. 18-cr-30141-NJR-2, 2021 WL 1986615, at *2 (S.D. Ill. May 18, 2021) (defendant claimed he sent a request to the Warden, but because he never provided any evidence to support his claims and according to the government the BOP had no record of any such request, the court found he failed to prove he exhausted his administrative remedies and denied the motion for compassionate release).

      I note that even if I were to evaluate the substance of the motion, I would still

4

deny it because there are no "extraordinary and compelling reasons" for release. 18 U.S.C. § 3582(c)(1)(A)(i). Mendez argues because he is now 50 years old, he is unlikely to commit any further criminal activity. [DE 1196 at 22.] But under the Guidelines, a defendant's advanced age may be "extraordinary and compelling" where the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his term of imprisonment, whichever is less. USSG § 1B1.13(b)(2). Mendez has not met any of these qualifications - he is significantly younger than 65, and he has served only about 5 years in custody (much less than 10 years and much less than 75 percent of his 17-year sentence).

What's more, I look at Mendez's claim that he is unlikely to re-offend skeptically since he has a long and violent criminal history, and continued to be active as a leader in the Latin Dragons even after getting out of jail on a different charge. Mendez states he has "several medical conditions which require close medical attention" [DE 1196 at 22], but he does not identify any specific health issues or give any additional details. The government filed Mendez's medical record under seal [DE 1204] and while he has had some visits with the medical staff for various reasons, there are no serious conditions that could qualify as an extraordinary and compelling reason for release. The medical records seem to show that Mendez is getting the care and treatment he needs. Finally, Mendez claims his rehabilitation efforts support release. He claims he has a "good work and conduct record." [DE 1196 at 23.] But the statute itself provides

5

that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

I will add for the sake of completeness, the section 3553(a) factors do not come close to weighing in Mendez's favor. 18 U.S.C. § 3553(a). For years, in and out of prison, Mendez was a leader in a violent street gang that wreaked havoc in Northwest Indiana and Southeast Chicago and Mendez personally drove his son to exact revenge on a rival gang which resulted in the senseless shooting of an Uber driver and his passenger. The gravity and length of his criminal conduct does not weigh in favor of release, and I am concerned about the safety of the public. Frankly, Mendez is fortunate to have received the agreed upon sentence that was imposed upon him (204 months), a sentence that he has not even served half of.

Mendez also claims that his guilty plea was "deceptively coerced depriving Defendant of several constitutional rights." [DE 1196 at 1, 4.] A motion for compassionate release is not the proper vehicle for such a claim. "The sort of 'extraordinary and compelling' circumstance that § 3582(c)(1) addresses is some new fact about an inmate's health or family status, or an equivalent post-conviction development, not a purely legal contention for which statutes specify other avenues of relief." *United States v. Von Vader*, 58 F.4th 369, 371 (7th Cir. 2023). The "near-unanimous consensus" among the federal appellate courts is that "challenges to the validity of a conviction are not cognizable as 'extraordinary and compelling reasons' under section 3582(c)(1)(A)." *United States v. Fernandez*, 104 F.4th 420, 431 (2d Cir. 2024)

6

(collecting cases).

Finally, I note that Mendez generally argues, and uses rhetoric, to support his bare assertion that prosecutors are abusing their positions nationally to use threats to obtain guilty pleas and lengthy sentences, all while depriving defendants of due process. [DE 1196 at 3-11; DE 1209 at 1-4.]  But Mendez does not offer any facts or evidence to suggest how his guilty plea in particular is allegedly coerced.  In his reply, he states the conditions in the county jail were deplorable and the prosecutor and his own attorney badgered and threatened him with life sentences if he did not accept the plea agreement. [DE 1209 at 7.]  In this case, Mendez entered into a plea agreement where Mendez agreed to plead guilty to the charge of racketeering conspiracy, and agreed to the sentence of 204 months incarceration.  As part of that plea agreement, the government dismissed a drug conspiracy charge that carried a 20-year maximum sentence. [DE 902 at 4.]  Mendez therefore received a substantial benefit for his plea. And while he claims "[j]udges [are] routinely complicit in administering conveyor-belt justice" [DE 1196 at 10], Magistrate Judge Martin conducted a change of plea hearing on June 9, 2021 [DE 903], and at Mendez's sentencing hearing I explained my reasoning at length as to why I thought the agreed-upon sentence of 204 months was fair, including that "I agree with the agreed sentence that has been arrived at here given the gravity of this offense and for all of the facts that are set forth in the presentence report and given the defendant's sort of jaw dropping criminal history." [DE 1037 at 9.]

Finally, Mendez asks for home confinement. [DE 1196 at 23.]  While

7

compassionate release, or a reduction in sentence, is governed by 18 U.S.C. § 3582(c)(1)(A), the location where a sentence is served is not, and only the BOP can determine where a sentence is served.  *See* 18 U.S.C. §§ 3621(b), 3624(c)(2). Consequently, I don't have the authority to order the remainder of Mendez's sentence to be served on home confinement.  *See United States v. Hall*, No. 2:17-CR-80-JVB-JEM, 2020 WL 4671166, at *1 (N.D. Ind. Aug. 12, 2020).

## Conclusion

For all of these reasons, Mendez's motion for compassionate release [DE 1196] is DENIED.  In his motion, Mendez also seeks appointment of counsel. [*Id.* at 24.] Because it is evident there is not a sufficient factual basis to grant the motion, and Mendez was able to adequately present his case without counsel, I will likewise DENY the request for counsel.

ENTERED: November 25, 2024.

   /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT